GEMINI TWIN FUND III, WILLIAM H. BRECK, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gemini Twin Fund III v. Commissioner
Docket No. 6764-88
United States Tax Court
T.C. Memo 1991-315; 1991 Tax Ct. Memo LEXIS 367; 62 T.C.M. (CCH) 104; T.C.M. (RIA) 91315; July 9, 1991, Filed *367 Decision will be entered for respondent. William H. Breck, pro se. Robert P. Crowther, for the respondent. COHEN, Judge. COHEN
MEMORANDUM OPINION In a Notice of Final Partnership Administrative Adjustment (FPAA), respondent determined that the distributive share of the partnership loss of Gemini Twin Fund III (Gemini) as to the limited partners was limited to their cash invested and did not include promissory notes payable to Gemini. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. Background
This case was submitted fully stipulated. The stipulated facts are incorporated as our findings by this reference. The initial tax matters partner (TMP) of Gemini was William K. Beebe (Beebe). In 1985, William H. Breck (petitioner) replaced Beebe in that position. Gemini is a partnership within the meaning of sections 761 and 7701(a)(2) and is subject to the unified audit and litigation procedures for partnership items under sections 6221 through 6233. At the time the petition in this case was filed, Gemini had its principal place of business in Anchorage, Alaska. Gemini failed to *368 file a Certificate of Limited Partnership when required under Alaska law. Gemini belatedly filed a Certificate of Limited Partnership with the State of Alaska. Gemini filed a Federal information return (Form 1065) for the tax period ended December 31, 1984. Gemini was formed for the purpose of engaging in oil and gas exploration, drilling, and related operations. Gemini had two classes of limited partners. One class consisted of purchasers of Leveraged Drilling Units (LDU's) and the other class consisted of purchasers of Oil and Gas Income Units (Income Units). Gemini was composed of 137 partners, of whom 33 partners acquired a total of 36 LDU's at the formation of Gemini; 112 partners acquired a total of 360 Income Units; and 11 partners acquired both LDU's and Income Units. The partners who acquired Income Units each paid to Gemini the sum of $ 1,000 in cash as their contribution to the capital of Gemini. Each Income Unit holder had a preference right and a minimum right in Gemini as follows: 6.7.1 The Oil & Gas Income Units shall have the preference right prior to "Payout" as defined in 7.2 hereof, to receive 60% of the Adjusted Gross Cash Flow to the Partnership from *369 Oil & Gas operations & 100% of the Net Distributable Cash Flow to the Partnership from capital contributions and other sources, which preference right shall be in lieu of and not in addition to any rights of the Oil & Gas Income Units under 6.5 and 6.6 above [relating to the allocation of net income or loss and net distributable cash flow from capital contributions and other sources of the partnership]. Adjusted Gross Cash Flow to the Partnership from Oil & Gas Operations as used herein, means the gross cash flow to the Partnership from Oil & Gas Operations, less adjustments for windfall profits taxes, severance taxes and overriding royalties. Distributions to the Oil & Gas Income Units under this paragraph shall be deducted from the Partnership's Gross Income and Gross Cash Flow prior to the deduction of expenses and the computation of Net Income or Net Distributable Cash Flow under paragraphs 6.5 and 6.6 hereof. 6.7.2 The Oil & Gas Income Units shall have the continuing preference right after "Payout" as defined in 7.2 hereof, to receive 25% of the Net Distributable Cash Flow from Oil & Gas Operations which is allocated to holders of Units of Limited Partnership Interest, and *370 1% of the Net Distributable Cash Flow from capital contributions and other sources. * * * 6.9.1 Oil & Gas Income Units shall have the right to receive distributions from the Partnership of cash flow from Oil and Gas Operations and other sources as herein described without regard to the risks of oil and gas drilling or other risks attendant to the Oil and Gas Operations of the Partnership, and shall have the minimum right to receive cash distributions from the Partnership equal to a minimum of 100% of capital contributed to the Partnership plus an amount equal to a 15% per annum compounded annual return on the capital contributed to the Partnership, calculated on the declining balance method, and amortized over a period of not more than 10 years from the date of formation of the Partnership. This minimum right of the Oil & Gas Income Units shall be amortized and satisfied annually prior to the payment of any expenses of the Partnership and prior to any distribution of net income to the Leveraged Drilling Units or to the General Partners. Concurrently with the foregoing minimum right, Oil & Gas Income Units shall have the preference right to receive cash distributions from the *371 Partnership, as described in paragraph 6.7 here of, until the Oil & Gas Income Units have received cash distributions equal to a return of capital contributed to the Partnership plus a 20% per annum compounded annual return on such capital contributed to the Partnership, calculated on the declining balance method. * * * 7.2 "Payout" is defined as the point in time when the Leveraged Drilling Units have received allocations of cash flow and/or deductions equal to the amount of cash invested in the Partnership, and the Oil and Gas Income Units have received cash distributions equal to a return of capital contributed to the Partnership plus a 20% per annum compounded annual return on capital invested in the Partnership, calculated on the declining balance method.
The partners who acquired LDU's each elected to pay to Gemini the sum of $ 2,500 in cash and to execute a recourse, collateralized promissory note for $ 10,000 as their contribution to the capital of Gemini. The rights of the LDU partners were as follows: 6.9.2 Leveraged Drilling Units shall have the right to receive distributions from the Partnership, of profits and losses from Oil and Gas Operations and of *372 cash flow from other sources as herein described, subject to the risks of oil and gas drilling and other risks attendant to the Oil and Gas Operations of the Partnership, which rights to receive distributions from the Partnership shall be subordinate to the preference right of the Oil and Gas Income Units prior to "Payout" as defined in 7.2 hereof, which preference right is described in 6.7.1 above, and subject to the continuing preference right of the Oil and Gas Income Units after "Payout", as described in 6.7.2 above. 6.9.3 The holders of Leveraged Drilling Units who have contributed Promissory Notes for a portion of their capital contribution shall be required to pay or satisfy their obligation on such Promissory Notes within ten (10) years following the formation of the Partnership, provided however, that the General Partners reserve the discretion to suspend further payments of interest on said Promissory Notes, when in the opinion of the General Partners, such interest payments are no longer needed for Partnership purposes.
The partners who acquired LDU's in Gemini furnished collateral to Gemini for their promissory notes. Those partners secured their notes with a deed *373 of trust on real estate and other property acceptable to the managing general partner of Gemini. The LDU holders certified that their ownership of the property submitted as collateral had a value that was equal to or greater than the amount of their promissory notes. The deeds of trust and other collateral security instruments were recorded under State law to perfect the security interest of Gemini in the property submitted as collateral. In addition to the rights outlined above, the limited partners had the following rights in the net income of Gemini: 6.11 Except as provided in Article 7 hereof [relating to compensation of general partners for services, distributions to general partners and "payout"], all of the net income of the Partnership, calculated before depletion and depreciation but after allowance of a reasonable reserve for contingencies, will be distributable to the Limited Partners.
In the event Gemini was liquidated or dissolved, the limited partnership agreement stated that the Income Unit holders and LDU holders had the following rights: 10.5.2 The balance of the assets, [after payment of the debts and liabilities to persons other than the partners] *374 if any, will then be distributed to and amongst the General Partners and the Limited Partners in the same proportions as income and losses are distributed during the year of dissolution and termination, provided however, that any identifiable property of the General Partners or of any Limited Partner which may have been loaned or contributed to the Partnership shall be returned to the person who loaned or contributed the same, and provided further however, that upon any such distribution of assets prior to "Payout" (as defined in 7.2 hereof), the General Partners shall distribute the remaining Partnership assets, after satisfying the claims of creditors, to the Oil & Gas Income Units, to the extent necessary to satisfy the minimum right of the Oil & Gas Income Units to cash distributions equal to 100% of capital contributed to the Partnership plus an amount an amount equal to a 15% per annum compounded annual return on such capital contributed to the Partnership.
On its form 1065l, U.S. Partnership Return of Income, for 1984, Gemini reported a total loss of $ 276,399. On the Schedules K-1 attached to the return and sent to the individual partners, Gemini reported each LDU partner's *375 capital contributed as $ 12,500, the partners' distributive share of ordinary income as ($ 7,600.96), other losses as ($ 26.43), and capital account at end of the year as $ 4,872.61. Respondent determined, in effect, that $ 10,000 of the $ 12,500 reported capital account, represented by the promissory note, should not have been included in determining the LDU partners' respective shares of partnership income or loss. See sections 704, 722, and 723. The FPAA sent to the TMP advised the TMP of his right to petition this Court and stated that the ZIP code of this Court is 20717; however, the correct ZIP code of this Court is 20217. Discussion
Petitioner contends that the FPAA in this case is defective because it failed accurately to advise the partners in Gemini of the correct address of this Court in order to allow them to file a petition. In , we explained: The FPAA is to the litigation of partnership items and affected items pursuant to the partnership audit and litigation provisions of section 6221 et seq., what the statutory notice of deficiency is to tax controversies before this Court that involve *376 respondent's determination of a deficiency, i.e., it is the notice to affected taxpayers that respondent has made a final administrative determination for particular tax years. * * * The FPAA showed an incorrect ZIP code in the mailing address of the Court. The FPAA was sent to and received by the TMP, and a timely petition was filed with this Court. The FPAA gave the TMP the requisite notice, and no prejudice resulted from the error in the Court's address. Cf. , affg. . This error did not invalidate the FPAA. The FPAA and the briefs in this case devote substantial argument to the application of section 465 to the promissory notes of the LDU partners to the partnership. That discussion applied to these notes, however, is inapposite. As respondent's brief notes, there is a serious question about the existence or extent of our jurisdiction in a partnership proceeding to determine amounts at risk. See . (Petitioner ignores the jurisdictional issue.) Similarly, references in the FPAA and *377 in the briefs to the basis of individual partners' interests are not addressed here, because we have no jurisdiction in this action to determine the amount of a partner's basis. See . In the particular circumstances of this case, however, we will address the character of the promissory notes given by the LDU partners under the partnership agreement and shown in the partners' capital accounts on the Forms K-1. Section 301.6231(a)(3)-1(a)(4), Proced. & Admin. Regs., relating to partnership items and with respect to a partner's capital contribution, provides: (4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner: (i) Contributions to the partnership; (ii) Distributions from the partnership; and (iii) Transactions to which section 707(a) applies (including the application of *378 section 707(b)).
Section 301.6231(a)(3)-1(c)(2), Proced. & Admin. Regs., provides: (2) Contributions. For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine: (i) The character of the amount received from a partner (for example, whether it is a contribution, a loan, or a repayment of a loan); (ii) The amount of money contributed by a partner; (iii) The applicability of the investment company rules of section 721(b) with respect to a contribution; and (iv) The basis to the partnership of contributed property (including necessary preliminary determinations, such as the partner's basis in the contributed property). To the extent that a determination of an item relating to a contribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that that determination requires other information, however, that item is not a partnership item. * * * Petitioner's primary contention is that the notes contributed by Gemini's partners to Gemini's capital consisted of "property" that should be recognized *379 in determining their capital accounts for purposes of allocation of partnership loss. Even assuming, as petitioner argues, that a note is property under State law and for other purposes, a taxpayer has no adjusted basis in his or her own note. Until the note is paid, it is only a contractual obligation to the partnership. The existence of collateral does not change this result. Cf. . Petitioner has not presented any evidence that the LDU holders made any payments on the notes. We have considered petitioner's other arguments. However the notes are characterized, they must be excluded in determining limitations on the partners' respective shares of the partnership loss. Decision will be entered for the respondent.