# United States Tax Court

166 T.C. No. 3

CONTINENTAL GRAND LIMITED PARTNERSHIP, CENTURY
SUBSIDIARY CORPORATION, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 859-22.                    Filed March 2, 2026.

————

FC was a German holding company that wholly
owned FS, also a German entity. In March 2001, FC issued
to FS a promissory note with a face value of $610 million.
USC, a U.S. company and FC's ultimate parent,
guaranteed the note. FS contributed the note to PS, a
partnership subject to the audit and litigation procedures
of the Tax Equity and Fiscal Responsibility Act of 1982,
Pub. L. No. 97-248, 96 Stat. 324.

In April 2002, FS elected to be disregarded as an
entity separate from FC, effective March 2001, a few days
before the date FC issued its note to FS.

In March 2009, FC paid more than $1 billion to PS
in satisfaction of its note and deferred interest. FS
subsequently withdrew from PS and received a
distribution of more than $1 billion.

R examined PS's 2009 return and issued a Notice of
Final Partnership Administrative Adjustment,
determining (among other things) that FC's basis in its
interest in PS was initially zero and that PS's basis in the
contributed promissory note was initially zero. P, the tax

matters partner of PS, petitioned this Court to challenge R's determinations.

R filed a Motion for Partial Summary Judgment, asking the Court to find that (1) FC's adjusted basis in the note at the time of the contribution was zero, (2) FC's basis in its interest in PS following the contribution was zero, and (3) PS's basis in the note following the contribution was zero. P objects to R's Motion.

*Held*: FS's election to be disregarded as an entity separate from FC caused FC's issuance of the note to FS to be disregarded and FS's contribution of the note to PS to be treated as FC's contribution of its own note to PS.

*Held, further*, FC's adjusted basis in its own note when it contributed the note to PS was zero.

*Held, further*, FC's basis in its interest in PS immediately following the contribution was zero.

*Held, further*, PS's basis in the note immediately following the contribution was zero.

*Held, further*, R's Motion will be granted.

————————

*Allen Duane Webber*, *Joseph B. Judkins*, and *Vivek A. Patel*, for petitioner.

*Charles E. Buxbaum*, *M. Jeanne Peterson*, *Christine S. Irwin*, *Travis Vance*, *Justin G. Meeks*, *Archana Ravindranath*, and *Kaitlyn N. Griffith*, for respondent.

## OPINION

TORO, *Judge*: This action under the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, presents a novel question concerning interactions between the entity classification

rules set out in Treasury Regulation §§ 301.7701-1, -2, and -3[1] (colloquially known as the check-the-box regulations) and the rules providing the basis consequences of a partner's contribution of property to a partnership.

Our Court has previously held that a partner who contributes his own note to a partnership in exchange for a partnership interest takes no basis in the interest. *E.g.*, *VisionMonitor Software, LLC v. Commissioner*, T.C. Memo. 2014-182, at *10 (collecting cases).

Here, a disregarded entity received a promissory note from its owner and then contributed that note to a newly formed partnership in exchange for an interest in that partnership. In a Motion for Partial Summary Judgment, the Commissioner asks us to treat the note as though it was contributed from the owner directly to the partnership and thus hold that the owner had no basis in the note at the time of the contribution.

Petitioner, Century Subsidiary Corp. (Century), tax matters partner of Continental Grand Limited Partnership (Partnership), asks us to look behind the disregarded entity's elected status and hold that there was a substantial basis in the promissory note at the time of its contribution.

The text of the entity classification regulations, the statutory and regulatory provisions governing contributions to partnerships, and our prior decisions regarding contributions of promissory notes lead us to grant the Commissioner's Motion.

*Background*

The following facts are derived from the parties' pleadings, their Motion papers, and the First Stipulation of Facts with attached Exhibits. They are stated solely for the purpose of ruling on the Motion before us and not as findings of fact in this case. *See Rowen v. Commissioner*, 156 T.C. 101, 103 (2021) (reviewed).

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

I.    *CSC Germany and CSC Financial*

At all relevant times, CSC Computer Sciences GmbH (CSC Germany) was a holding company that wholly owned German subsidiaries engaged in an active IT services business. CSC Germany was incorporated in Germany. One of its wholly owned subsidiaries was CSC Financial GmbH (CSC Financial), which was also incorporated in Germany.

II.   *Issuance of the Promissory Note*

On March 26, 2001, CSC Germany issued to CSC Financial a promissory note (Note). The Note provided that its issue price was $610,220,155.[2]  Computer Sciences Corp. (CSC), the ultimate U.S. parent of CSC Germany and CSC Financial, guaranteed the Note.

The Note specified that CSC Germany would pay $1,104,490,847 to the holder of the Note on August 17, 2009. That amount reflected the issue price and deferred interest. The Note was a legal, valid, and binding obligation of CSC Germany and was enforceable against CSC Germany in accordance with its terms. The parties have stipulated that the fair market value of the Note on March 26, 2001, was $610,220,155.

III.  *Formation of the Partnership and Assignment of the Note*

The Partnership was organized as a limited partnership under Nevada law as of March 23, 2001. At all relevant times, the Partnership owned computer equipment and related property that it leased to affiliates within the CSC consolidated group. The Partnership's principal place of business is in Virginia.[3]

On March 26, 2001, CSC Financial assigned the Note to the Partnership as consideration for its limited partnership interest in the Partnership. Beginning March 26, 2001, and until March 19, 2009, the Partnership had three partners: CSC Financial, Century Credit Corp., and Century (the petitioner here).

---

[2] The record is not clear as to whether CSC Financial transferred cash to CSC Germany in exchange for the Note. For purposes of this Opinion, we assume (in Century's favor) that it did.

[3] Absent stipulation to the contrary, *see* I.R.C. § 7482(b)(2), appeal of this case would lie to the U.S. Court of Appeals for the Fourth Circuit, *see* I.R.C. § 7482(b)(1).

IV.    *CSC Financial's Election to Be Disregarded*

On April 12, 2002, more than a year after assigning the Note to the Partnership, CSC Financial elected to be disregarded as an entity separate from CSC Germany under Treasury Regulation § 301.7701-3(c).  CSC Financial's election was effective March 23, 2001.  That is, the election was retroactively made effective to a time before CSC Financial contributed the Note to the Partnership.

V.    *Payment in Satisfaction of the Note and Liquidation of CSC Financial's Interest in the Partnership*

Nearly eight years after the formation of the Partnership, on March 16, 2009, CSC Germany, the Partnership, and CSC Financial entered into an addendum to the Note.  Under the addendum, CSC Germany agreed to prepay its obligations under the Note by transferring $1,072,774,990 to the Partnership.  The transfer took place the same day.

Also that day, CSC Financial liquidated its interest in the Partnership.  To effect the liquidation, the Partnership distributed $1,080,540,963 to CSC Financial.

VI.    *The Partnership's Tax Return and the Notice of Final Partnership Administrative Adjustment*

The Partnership filed Form 1065, U.S. Return of Partnership Income, for the taxable year 2009.  The Commissioner examined the Partnership's return and issued a Notice of Final Partnership Administrative Adjustment on November 1, 2021.

On Form 886–A, Explanation of Adjustments, the Commissioner stated his position that CSC Germany should be treated as having had zero basis in the Note; that CSC Germany should be treated as having zero basis in its interest in the Partnership as of the date of the contribution; and that the Partnership should be treated as having zero basis in the Note as of the date of the contribution.[4]  Century timely petitioned our Court for review.

---

[4] Century tells us that the basis determinations at issue are central to the computation of a foreign currency translation loss under section 987 that CSC Germany claimed in 2009.  The computation of the loss is not addressed in the Motion, and we do not discuss that computation further.

VII.   *Motion for Partial Summary Judgment*

In his Motion, the Commissioner seeks rulings on three issues: (1) CSC Germany's adjusted basis in the Note when the Note was contributed to the Partnership; (2) CSC Germany's basis in the partnership interest immediately after the contribution; and (3) the Partnership's basis in the Note immediately after its contribution. Century objects to the Commissioner's Motion.

*Discussion*

I.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly and unnecessary trials.  *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).   Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).  In considering the Motion, the Court construes factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  *Sundstrand Corp.*, 98 T.C. at 520.

Before addressing the basis consequences of the transactions among CSC Germany, CSC Financial, and the Partnership, we must determine how the tax law views those transactions.  Thus, we turn first to the effect of CSC Financial's election to be disregarded as an entity separate from CSC Germany.

II.   *Effect of CSC Financial's Election to Be Disregarded*

A.   *Entity Classification and the Check-the-Box Regulations in General*

The tax treatment of a business entity turns, in part, on what type of entity it is.  *See Moore v. United States*, 144 S. Ct. 1680, 1685 (2024) (comparing the taxation of S corporations, other corporations, and partnerships); *Estate of Jackson v. Commissioner*, T.C. Memo. 2021-48, at *76 ("The choice of entity can have big effects on the tax consequences that a business faces."); *see also* 8 *Mertens Law of Federal Income Taxation* § 33:1, Westlaw (database updated December 2025) ("Taxation considerations of choosing an entity include the applicable taxation and rates of the entity, the opportunities for income-shifting, the available

accounting methods, the loss limitation rules, the alternative minimum tax, and compliance requirements." (Footnotes omitted.)).

The Secretary promulgated the check-the-box regulations to provide rules for classifying business entities. *See* Treas. Reg. §§ 301.7701-1 to -3. Under the regulations, entities with certain characteristics are automatically classified as corporations. Treas. Reg. § 301.7701-2(b) (defining "corporation" for federal tax purposes).

Entities that are not classified as corporations under Treasury Regulation § 301.7701-2(b) can elect their tax treatment. Treas. Reg. § 301.7701-3(a). As relevant here, a foreign entity with a single owner may elect to be treated as an association (and thus a corporation) or to be disregarded as an entity separate from its owner.[5] *Id.*

When an entity previously classified as an association elects to be disregarded, the following is deemed to occur: "The association distributes all of its assets and liabilities to its single owner in liquidation of the association." *Id.* para. (g)(1)(iii). Thereafter, "its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner." Treas. Reg. § 301.7701-2(a).

A disregarded entity is not, however, invisible for all federal tax purposes. Treasury regulations provide for certain circumstances (not applicable here) in which a disregarded entity is treated as an entity separate from its owner. *See id.* para. (c)(2)(iii) (providing rules related to refunds and credits of federal tax, as well as federal tax liabilities for periods in which the entity was not disregarded and federal tax liabilities of another entity for which the entity is liable). Additionally, this Court has held that the entity classification regulations do not render a single-member limited liability company (LLC) invisible for the purpose of valuing a gift of an interest in the LLC. *Pierre v. Commissioner*, 133 T.C. 24, 35 (2009) ("[W]e do not agree that the check-the-box regulations apply to disregard the LLC in determining how a

---

[5] An election under Treasury Regulation § 301.7701-3 can be made retroactively. *See id.* para. (c)(1)(iii) ("The effective date specified [for the election] can not be more than 75 days prior to the date on which the election is filed . . . ."). In this case, the parties have stipulated that CSC Financial's April 2002 election was effective March 23, 2001, outside the 75-day period. But Treasury Regulation §§ 301.9100-1, -2, and -3 provide standards the Commissioner uses to determine whether to extend the time to make regulatory elections like the one at issue. Although the record is silent on this point, in view of the parties' stipulation as to the effective date of the election, we assume that the Commissioner exercised his discretion to grant such an extension here.

*donor* must be taxed under the Federal gift tax provisions on a transfer of an ownership interest in the LLC."), *supplemented by* T.C. Memo. 2010-106.

B. *Application to CSC Financial*

As of March 23, 2001, CSC Financial was classified as an association under the check-the-box regulations. When CSC Financial's election became effective, on March 23, 2001, CSC Financial was deemed to have liquidated and distributed its assets and liabilities to CSC Germany. *See* Treas. Reg. § 301.7701-3(g)(1)(iii). After that date, for federal tax purposes, CSC Financial had no assets of its own. Importantly, the deemed distribution included all of CSC Financial's cash, meaning that any cash CSC Financial subsequently lent to CSC Germany belonged to CSC Germany and not CSC Financial for federal tax purposes. And from March 23, 2001, onward, CSC Financial's activities were treated as activities of a branch or division of CSC Germany. *See* Treas. Reg. § 301.7701-2(a).

As a result, as relevant here, the issuance of the Note by CSC Germany to CSC Financial on March 26, 2001, must be disregarded for federal tax purposes. And, since CSC Financial was, on March 26, 2001, no longer regarded as an entity separate from its owner, its assignment of the Note to the Partnership is treated as if it were undertaken by a branch or division of CSC Germany. So, from a federal tax perspective, CSC Germany is viewed as having contributed its own note to the Partnership in exchange for a partnership interest.

Such a view of the transactions at issue here does not, as Century contends, "destroy state-created property rights." Pet'r's Resp. 57. Whether CSC Germany became indebted to CSC Financial, and whether CSC Financial transferred a promissory note to the Partnership, are questions of state property law, not federal tax law. As the Supreme Court has observed, "[s]tate law creates legal interests and rights." *See Morgan v. Commissioner*, 309 U.S. 78, 80 (1940). But "[t]he federal revenue acts designate [how the] interests or rights, so created, shall be taxed." *Id.*

The U.S. Court of Appeals for the Ninth Circuit has helpfully explained that the answers to questions of state law are not disturbed by applying the entity classification regulations:

> True, a single-member LLC's corporate form may be disregarded for federal tax purposes. But, as the language

of Treasury Regulations § 301.7701-2(a) itself plainly indicates, that form is merely *disregarded*, not altered. In other words, the corporate form persists, but the tax consequences change.

*Seaview Trading, LLC v. Commissioner*, 858 F.3d 1281, 1287 (9th Cir. 2017). Similarly, even when transactions between a disregarded entity and its parent are disregarded for federal tax purposes, their existence or character for state law purposes is not altered.

Nor is the classification of an entity as disregarded subject to an exception for basis determinations. Century cites *Pierre* as an example of a decision in which the Court looked past an entity's disregarded status. But *Pierre* merely refused to let an entity's disregarded status affect the valuation of an interest in that entity for gift tax purposes: It analyzed the transfer of interests in a disregarded entity at the owner level. It said nothing about basis determinations and did not assign tax consequences to the transactions between a disregarded entity and its owner, as Century would have us do here.

Having determined how the relevant transactions are viewed for tax purposes, we turn to the basis consequences of CSC Germany's contribution of the Note to the Partnership.

III.    *Basis of CSC Germany's Partnership Interest*

A.    *Analysis*

Section 705 sets out rules for determining the adjusted basis of a partner's interest in a partnership. It provides that the adjusted basis of a partner's interest shall be the basis determined under section 722 or section 742, increased or decreased by certain amounts (including the partner's distributive share of partnership income and losses). I.R.C. § 705(a).

Section 722 applies to "an interest in a partnership acquired by a contribution of property, including money, to the partnership."[6] It further provides that the basis of such an interest "shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the

---

[6] Section 742 governs the determination of "basis of an interest in a partnership acquired other than by contribution."

amount (if any) of gain recognized under section 721(b) to the contributing partner at such time." I.R.C. § 722.

The Commissioner argues, in his Motion and Reply, that the contribution of the Note was not a "contribution of property" within the meaning of section 722. Resp't's Mot. 26–28, 32; Resp't's Reply 15. By contrast, Century urges that the Note "was 'property' within the meaning of sections 722 and 723." Pet'r's Resp. 21.

Our Court has held that debt is considered property in the hands of the holder. *Norwest Corp. & Subs. v. Commissioner*, 108 T.C. 265, 301 (1997). It is less immediately clear whether a promissory note is property in the hands of the writer.[7] *Cf. Gemini Twin Fund III v. Commissioner*, T.C. Memo. 1991-315, 62 T.C.M. (CCH) 104, 107 (assuming, as argued by the taxpayer, "that a note is property under State law and for other purposes" and noting that "[u]ntil the note is paid, it is only a contractual obligation to the partnership"), *aff'd*, 8 F.3d 26 (9th Cir. 1993) (unpublished table decision).

We need not, however, get bogged down by metaphysical questions. To decide the Motion we assume, as Century urges, that the contribution of the Note was a "contribution of property" within the meaning of section 722. Under that assumption, we must still grant the Motion.

Under section 722, the basis of CSC Germany's interest in the Partnership was equal to the adjusted basis of the Note in the hands of CSC Germany at the time of the contribution. Except as otherwise provided in subchapters C, K, and P, the adjusted basis of property is the property's basis, determined under section 1012, adjusted as provided in section 1016. I.R.C. § 1011(a).

Section 1012, for its part, provides that "[t]he basis of property shall be the cost of such property, except as otherwise provided." I.R.C. § 1012(a). The cost of property is the amount paid for it. Treas. Reg. § 1.1012-1(a); *see also Cost, Black's Law Dictionary* (4th ed. 1957)

---

[7] *Black's Law Dictionary* quotes John Salmond's *Jurisprudence* for the proposition that some usages of the term "property" exclude debts: "The law of property is the law of proprietary rights *in rem*, the law of proprietary rights *in personam* being distinguished from it as the law of obligations. According to this usage a freehold or leasehold estate in land, or a patent or copyright, is property; but a debt or the benefit of a contract is not . . . ." *Property, Black's Law Dictionary* (12th ed. 2024) (quoting John Salmond, *Jurisprudence* 423–24 (Glanville L. Williams ed., 10th ed. 1947)).

("Expense. . . . The price paid, as for an article purchased for exportation, with all incidental charges paid at the place of exportation. . . . The amount originally expended in performing a particular act or operation, or for production or construction, as of a building."); *Cost price*, *Black's Law Dictionary* (4th ed. 1957) ("That which is actually paid for goods."); *Cost*, *Webster's New International Dictionary* (2d ed. 1954) ("The amount or equivalent paid, or given, or charged, or engaged to be paid or given for anything bought or taken in barter or for service rendered . . . .").[8]

Here, the Note in the hands of its maker had no cost. *See Lessinger v. Commissioner*, 872 F.2d 519, 525 (2d Cir. 1989) ("Liabilities by definition have no 'basis' in tax law generally or in section 1012 terms specifically."), *rev'g on other grounds* 85 T.C. 824 (1985); *Oden v. Commissioner*, T.C. Memo. 1981-184, 41 T.C.M. (CCH) 1285, 1290 ("Since [the taxpayer] incurred no cost in making the note, its basis to him was zero."), *aff'd*, 679 F.2d 885 (4th Cir. 1982) (unpublished table decision). That is, CSC Germany paid no amount, in money or property, to create the Note. Nor did CSC Germany "engage to pay or give" anything to someone else in exchange for that third person's help in making the Note.[9] The Note's adjusted basis in CSC Germany's hands was therefore zero, as we have held in multiple similar cases. *See Oden*, 41 T.C.M. (CCH) at 1290; *see also VisionMonitor Software, LLC v. Commissioner*, T.C. Memo. 2014-182, at *10; *Dakotah Hills Offs. Ltd. P'ship v. Commissioner*, T.C. Memo. 1998-134, 75 T.C.M. (CCH) 2122, 2125; *Gemini Twin Fund III*, 62 T.C.M. (CCH) at 107.

B.    *Century's Counterarguments*

Century raises several arguments in support of its claim that the adjusted basis of the Note in CSC Germany's hands was equal to its fair market value of $610 million. None carries the day.

---

[8] This definition remains largely unchanged. *See* Pet'r's Resp. 28 n.16 (collecting dictionaries).

[9] Imagine, for example, that CSC Germany had hired a professional printer to produce the Note and had agreed to pay the printer in the future for the preparation of the Note. That type of payment would be covered by dictionary definitions of the term "cost." Century has made no effort to show that any such costs are at issue here. *See* Rule 121(c)(1), (f)(2). And the dictionary definitions, as applied to the Note, do not cover CSC Germany's promise to pay the Partnership for an interest in the Partnership, a promise that was memorialized by the Note. As we explain further below, the promise to pay the Partnership was not a cost of the making of the Note. *See infra* Discussion Part III.B.1.

1.    *Obligations as Costs and* Commissioner v. Tufts

Century argues that "the common and ordinary meaning of 'cost' includes amounts engaged to be paid" and that the Supreme Court's holding in *Commissioner v. Tufts*, 461 U.S. 300 (1983), requires us to include the amount of CSC Germany's obligation in its basis in the Note under section 1012.  Pet'r's Resp. 28–29.

This argument misses the mark.  Section 1012 instructs us to consider the cost paid by a taxpayer to acquire property.  In *Tufts*, a taxpayer borrowed in order to purchase real property.  *Commissioner v. Tufts*, 461 U.S. at 302.  That borrowing, the Supreme Court held, was a cost that increased the taxpayer's basis in the real property.  *Id.* at 307–08 ("Because of the obligation to repay, the taxpayer is entitled to include the amount of the loan in computing his basis in the property; the loan, under § 1012, is part of the taxpayer's cost of the property."); *see also Bertoli v. Commissioner*, 103 T.C. 501, 515 (1994) ("Ordinarily, *a purchaser's* cost basis under section 1012 includes both promissory notes issued by the purchaser and any liabilities of the seller assumed by the purchaser as consideration for the sale." (Emphasis added.)).

In this case, section 722 requires us to examine not the cost of CSC Germany's partnership interest, but the cost of the Note itself.  CSC Germany's obligation was not a cost of the Note.  CSC Germany did not acquire the Note by incurring its obligation—the Note merely evidences the obligation.  Consequently, neither *Tufts* nor the proffered dictionary definitions support the view that CSC Germany's obligation to make payments under the Note is part of the cost of making the Note or included in computing the adjusted basis of the Note.

2.    *Efforts to Distinguish Our Prior Promissory Note Cases*

Century seeks to distinguish our prior cases.  It contends that, unlike the case before us, *VisionMonitor Software*, *Dakotah Hills Offices*, *Gemini Twin Fund III*, and *Oden* dealt with notes that "lacked the hallmarks of genuine indebtedness to create tax basis for a direct and knowable tax benefit."  Pet'r's Resp. 48.  It further states that those cases "applied the substance-over-form doctrine."  Pet'r's Resp. 39.

Century misreads our past decisions.  They do not address whether certain promissory notes created genuine indebtedness.  *E.g.*, *VisionMonitor Software, LLC*, T.C. Memo. 2014-182, at *13 n.6 ("[T]he relevant question isn't whether the notes were a debt owed by the

partners to VisionMonitor but whether the partners had basis in the notes.").  Nor do they recharacterize promissory notes or contributions thereof as another type of instrument or transaction under the substance over form doctrine or related doctrines.  Instead, they merely apply the established rule that "the contribution of a partner's own note to his partnership isn't the equivalent of a contribution of cash, and without more, it will not increase his basis in his partnership interest." *Id.* at \*10.

Nor does the foreseeability of the tax consequences here make a difference.  Century repeatedly stresses that the foreign-currency translation loss CSC Germany experienced after its withdrawal from the Partnership was unforeseen and unforeseeable.  That may be true, given fluctuations in relative currency values over the years that followed CSC Germany's contribution of the Note to the Partnership.  But it does not change the rules that apply when determining basis under sections 722 and 723.

CSC Financial elected to be disregarded more than one year after the formation of, and the relevant contribution to, the Partnership.  CSC Financial presumably made its choice because being disregarded was its preferred classification, taking into account its knowledge of past events and plans for the future.  Century cannot now attempt to roll back the election simply because it is preferable, with hindsight, for CSC Financial to have been classified another way.  *See Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) ("[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not.").

3.    Lessinger v. Commissioner *and* Peracchi v. Commissioner

Century also points to the decisions in *Lessinger v. Commissioner*, 872 F.2d 519, and *Peracchi v. Commissioner*, 143 F.3d 487 (9th Cir. 1998), *rev'g* T.C. Memo. 1996-191, as indicators that CSC Germany should have received some basis in its partnership interest.  These decisions are inapplicable to the issues raised in the Commissioner's Motion.

To begin, both cases arose in the context of corporations and involved the application of section 357(c), a Code provision different

from the ones before us. In *Lessinger*, the U.S. Court of Appeals for the Second Circuit addressed whether a taxpayer who had contributed more liabilities than assets to a corporation could avoid recognizing gain under section 357(c) by promising to pay an amount to the corporation equal to the excess contributed liabilities. Such a situation—where a taxpayer attempts to avoid gain by offsetting excess liabilities contributed to a corporation—is not present here. In this case, the Partnership assumed none of CSC Germany's liabilities as part of the contribution, and CSC Germany recognized no gain as a result of the contribution. In addition, CSC Germany made its contribution to a partnership, not to a corporation.

Moreover, the Second Circuit interpreted section 357(c) to refer to the transferee corporation's adjusted basis in its property. *Lessinger v. Commissioner*, 872 F.2d at 526. Here, by contrast, section 722 keys its analysis to the transferor partner's basis (and, for that matter, so does section 723). The Second Circuit expressed doubt that the transferor taxpayer had basis in his promise to pay the corporation. *Lessinger v. Commissioner*, 872 F.2d at 525 ("The taxpayer could, of course, have no 'basis' in his own promise to pay the corporation $255,000, because that item is a liability for him."); *id.* at 526 n.6 ("The taxpayer, on the other hand, attempts to convince us that, as an accrual basis taxpayer, he had a 'basis' in his personal obligations to the corporation. We note, however, that the fact that he would have had a liability on his books does not require the conclusion that he had a 'basis' in it for tax purposes.").

The Ninth Circuit's decision in *Peracchi* is similarly inapplicable. *Peracchi* addressed a taxpayer who contributed a promissory note to a closely held corporation in order to comply with a state regulation. In its opinion, the Ninth Circuit stated that it was not talking about partnership or S corporation issues, but only contributions to C corporations. *Peracchi v. Commissioner*, 143 F.3d at 494 n.16 ("Our holding therefore does not extend to the partnership or S Corp context."). By its own terms, *Peracchi* has no bearing on CSC Germany's contribution to a partnership.

\*     \*     \*

We conclude that CSC Germany's adjusted basis in the Note at the time of contribution was zero. Pursuant to section 722, CSC Germany took a zero basis in its partnership interest as well.

IV.    *Basis of the Note in the Hands of the Partnership*

Section 723 sets out the rule governing the basis of property contributed to a partnership by a partner.  It provides that such basis "shall be the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time."

As discussed in detail above, the adjusted basis of the Note to CSC Germany at the time of the contribution was zero.  CSC Germany recognized no gain with respect to the contribution.  Thus, the basis of the Note in the hands of the Partnership was zero.[10]

V.    *Conclusion*

CSC Financial's election to be disregarded as an entity separate from CSC Germany requires us to treat CSC Germany as though it contributed the Note directly to the Partnership.  The consequences of that treatment for the basis of CSC Germany's interest in the Partnership, and the basis of the Note in the hands of the Partnership, are straightforward.  CSC Germany took a zero basis in its partnership interest, and the Partnership took a zero basis in the Note.[11]

Accordingly, we will grant the Commissioner's Motion for Partial Summary Judgment.

To reflect the foregoing,

*An appropriate order will be issued.*

---

[10] Century argues that, as a result of this holding, the Partnership would have gain when CSC Germany made payments on the Note.  We are not sure we agree with Century's argument, but, in any event, we need not decide that issue here.

[11] It remains possible that additional contributions to the Partnership by CSC Germany, or other transactions with basis consequences in the years following CSC Germany's contribution to the Partnership, increased CSC Germany's basis in its partnership interest before its liquidation in 2009.  We express no view on such transactions.