T.C. Memo. 1998-134


UNITED STATES TAX COURT


DAKOTAH HILLS OFFICES LIMITED PARTNERSHIP,
AN ARIZONA LIMITED PARTNERSHIP,
WILLIAM M. AND DIANNE B. STEPHENS,
TAX MATTERS PARTNER, ET AL.,[1]  Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

_____

[1]Cases of the following petitioners are consolidated herewith:  Pavillion II Limited Partnership, An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 18956-93; Copper Crest I Limited Partnership, An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 18962-93; Dakotah Hills Retail Limited Partnership, An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 18963-93; Club Carmel Limited Partnership, An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 18965-93; Pio Decimo II Limited Partnership, An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 18990-93; Ina Thornydale Limited Partnership, An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 18992-93; Ironwood Manufacturing, Ltd., An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 18993-93; and Vail Commerce Center Limited Partnership, An Arizona Limited Partnership, William M. and Dianne B. Stephens, Tax Matters Partner, docket No. 19067-93.

Docket Nos. 18955-93, 18956-93,     Filed April 6, 1998.
18962-93, 18963-93,
18965-93, 18990-93,
18992-93, 18993-93,
19067-93.


William M. and Dianne B. Stephens, pro sese.[2]

James E. Archie, for respondent.


MEMORANDUM OPINION

HAMBLEN, Judge:  Respondent issued a notice of final partnership administrative adjustments (FPAA) to each partnership involved in these cases.  The proposed adjustments determined by respondent in each case for the 1989 taxable year are as follows:

| Partnership | Adjustment |
| --- | --- |
| Dakotah Hills Offices Ltd. Partnership | $385,519 |
| Pavilion II Ltd. Partnership | 432,084 |
| Copper Crest I Ltd. Partnership | 181,371 |
| Dakotah Hills Retail Ltd. Partnership | 972,812 |
| Club Carmel Ltd. Partnership | 234,902 |
| Pio Decimo II Ltd. Partnership | 2,685,926 |
| Ina Thornydale Ltd. Partnership | 480,813 |
| Ironwood Manufacturing Ltd. Partnership | 918,765 |
| Vail Commerce Center Ltd. Partnership | 417,156 |

After concessions, the principal issue for decision is whether petitioners recognized income pursuant to a section 752(b) deemed distribution.[3]

_____

[2]On Jan. 30, 1996, this Court granted George Tomas Rhodus' petition to withdraw as counsel for petitioners.

[3]All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise
(continued...)

FINDINGS OF FACTS

This case was submitted on the basis of the entire record. The stipulation of facts and the annexed exhibits are incorporated herein and found accordingly.  The principal place of business of the partnerships was located in Tucson, Arizona, at the time the petitions were filed.  The partnerships were formed on the following dates:

| | |
|---|---|
| Dakotah Hills Offices Limited | October 25, 1984 |
| Pavilion II Limited Partnership | May 16, 1986 |
| Copper Crest I Limited Partnership | February 7, 1986 |
| Dakotah Hills Retail Limited Partnership | July 19, 1985 |
| Club Carmel Limited Partnership | August 22, 1985 |
| Pio Decimo II Limited Partnership | December 18, 1984 |
| Ina Thornydale Limited Partnership | April 9, 1985 |
| Ironwood Manufacturing Limited Partnership | December 3, 1985 |
| Vail Commerce Center Limited Partnership | December 3, 1985 |

The Agreements and Certificates of Limited Partnership (Agreements) designated, inter alia, D. Randall Jenkins, and the JNC Companies, as the general partners for the partnerships. Most of the Agreements provided that the partnerships were to be capitalized by promissory notes (investor notes) which were executed and delivered by the limited partners to the partnerships as consideration for the acquisition of their partnership interests, i.e., "partnership units".  In most instances, the Agreements provided:

> 2.10 <u>First Promissory Note(s)</u>:  Shall mean the
> Demand Promissory Note(s) executed by the Limited
> Partners as payment for each Limited Partnership

---

[3](...continued)
indicated.

Unit(s) being purchased, and shall be in an amount equal to [dollar amounts] per unit which shall be secured by the Limited Partner's unit(s) being purchased and which is intended to be converted into an installment promissory note(s) (the "Second Promissory Note") when the Partnership obtains a financial commitment from a bank, savings and loan association or other financial institution.

     *     *     *     *     *     *     *

     2.18  Partnership Unit: Partnership unit is the quantitative term of measurement used to measure one (1) Limited Partner's interest in the Limited Partnership as compared with other Limited Partners and the entire Partnership. * * *

     *     *     *     *     *     *     *

     2.21 Second Promissory Note(s):  Shall mean the Second Promissory Note(s) shall be executed by the Limited Partners as a modification of and in satisfaction of the First Promissory Note(s) and shall be prepared so as to satisfy the requirements of the bank, savings and loan association or other financial institution that has given the Partnership a loan commitment.

Similarly, the remaining Agreements stipulated that the investor notes would be utilized to acquire partnership interests in the limited partnerships.  Furthermore, the Agreements required each investor to execute a security agreement which conveyed to the partnership a security interest in his or her partnership

interest.[4]  This requirement was imposed, in part, to secure payment of the investor notes.

In accordance with the aforementioned security agreements, the partnerships negotiated, pledged, and assigned all of the investor notes as collateral for loans to the partnerships from financial institutions.  In turn, the partnerships acquired a number of real properties with the loan proceeds.  The notes issued to the lenders by the partnerships were nonrecourse to the general partners, but through various additional agreements, the general partners were rendered liable with respect to the partnership indebtedness.  These notes were not, by their terms, recourse to the limited partners.[5]

---

[4]As an example, on Oct. 12, 1984, William M. and Dianne B. Stephens, as investors, signed a Security Agreement, in which they:

> [acknowledged] that the investor note and this agreement, which stands as collateral therefore [sic], will be assigned by the partnership as collateral for a loan to a lender, and [the Stephens] hereby expressly waives every defense, counterclaim or set-off which [the Stephens] or any of [the other investors] may now have or hereinafter may have to any action by such lender or the lender's assignee.

This Security Agreement designates "Dakotah Hills Offices Limited Partnership" as the "Secured Party".

[5]For purposes of this opinion, the term, "recourse indebtedness" means that the debtor's assets may be reached by creditors if the debt is not paid.  Conversely, "nonrecourse indebtedness" means that a creditor's remedies are limited to a particular collateral for the debt.  Raphan v. United States, 759 F.2d 879 (Fed. Cir. 1985).

As an additional inducement for the lenders to accept the investor notes from the partnerships as collateral, the partnerships negotiated and purchased financial guaranty bonds from Admiral Insurance Co. (Admiral). The bonds provided that in the event any limited partner defaulted on his or her obligations under the investor notes, Admiral agreed to pay to the lender(s) the amount due under the investor notes. The terms of the financial guaranty bonds provided that upon the satisfaction of the bond, the lenders were required to transfer the investor notes as well as the security agreements to Admiral.

Concomitantly with the purchase of the bonds, the partnerships entered into indemnity agreements in which the partnerships agreed to indemnify Admiral against any loss on the bonds. In most instances, the partnerships' obligation under the indemnity agreements was secured by liens on real estate properties owned by the partnerships.

Sometime in 1987 and 1988, the partnerships initiated bankruptcy proceedings and terminated payments on the partnership notes held by the financial lenders. Consequently, the lenders made demand on the limited partners who had contributed the investor notes, to the extent stipulated in the financial guaranty bonds. The limited partners, however, refused to honor the outstanding investor notes. The lenders, therefore, demanded and received a settlement from Admiral pursuant to the terms of the bonds.

Subsequently, within and without the bankruptcy proceedings, the parties engaged in prolonged and lengthy litigation. In particular, Admiral sued the limited partners who had defaulted on the outstanding investor notes, contending that it had become the holder of the aforementioned notes. The limited partners, in turn, countersued Admiral, alleging that they had been fraudulently induced to enter the partnerships and that Admiral had been party to the fraud.

On November 10, 1989, Admiral and the representatives of the limited partners, executed a Settlement Agreement. The preamble to the Settlement Agreement states that Admiral and the investors were "parties to certain lawsuits" which, at the time of the agreement, were "pending in the United States District Court for the District of Arizona and/or the Arizona Superior Court in which Admiral has asserted claims against Investors and Investors have asserted claims against Admiral."[6] Under the terms of the Settlement Agreement, an investor was given until December 31, 1989, to elect one of two options. The first option was as follows:

> Commencing on the later of (i) January 1, 1990, or
> (ii) the effective date of any enacted statutory
> provisions amending the Internal Revenue Code to
> provide for preferential treatment with respect to the

---

[6]It appears that at least some of the limited partners in the various partnerships were parties to a suit against Admiral, but the record does not disclose whether all of the limited partners involved in this proceeding were parties to such lawsuit.

gain arising from the sale or exchange of a capital asset, the Investors shall abandon their interests in the JNC Partnerships by conveying them to the Trustee, and thereafter, the Investors' promissory notes that are the subject of claims by Admiral against the Investors or are otherwise held by Admiral shall be returned to the Investors.  The return of the Investors' promissory notes is intended as a purchase price reduction within the meaning of I.R.C. Section 108(e)(5).  * * *

The second option provided as follows:

Immediately after the conclusion of the bankruptcy proceedings, the Investors shall convey their interests in the JNC Partnerships to the Trustee; and all promissory notes executed by the Investors that are the subject of claims by Admiral against the Investors or are otherwise held by Admiral shall be returned to the Investors.  The return of the Investors' promissory notes is intended as a purchase price reduction within the meaning of I.R.C. Section 108(e)(5).

In sum, under the Settlement Agreement, an investor could "abandon" his or her interest or interests in the partnership "by conveying them to the Trustee", or the investor could elect to "convey" his or her interest or interests in the partnership to the trustee.  In either event, the investor notes were to be returned.  Moreover, under the Settlement Agreement, the investors assigned to Admiral:

all of their right, title and interest in and to (i) any claim or cause of action against any and all Third Parties * * * and (ii) any claim, or cause of action which was, could have been, could be or might be asserted arising out of or in any manner related to the bankruptcy of JNC, the JNC Partnerships or the principals, general partners or affiliates thereof * * *

In turn, Admiral agreed not to pursue the investors' claims against specific individuals enumerated in the document, but reserved the right to "pursue any of the assigned claims against any other person, or any of its own claims against any person." The investors, however, retained the right to pursue other specific, enumerated individuals at their own individual expense and, through counsel of their own choosing. Next, Admiral agreed to "indemnify, defend and hold harmless the Investors" against claims by third parties relating to the investor notes. Finally, on December 29, 1989, the Settlement Agreement was approved by the bankruptcy court.[7]

In April 1993, respondent mailed the FPAA's, to petitioners, which proposed adjustments on the premise that "the discharge of liability on the partners' capital contribution notes in 1989 resulted in a partnership distribution pursuant to * * * section 752(b)."

Petitioners filed a petition with this Court contesting respondent's proposed adjustments. Thereafter, we granted petitioners' motion to consolidate all of the cases, pursuant to Rule 141. Petitioners filed a motion for summary judgment, on the ground that the adjustments in the FPAA's were not

---

[7]The record indicates, however, that the Settlement Agreement did not encompass all of the investors involved in the partnerships.

"partnership items" for purposes of section 6231.[8]  Subsequently, the case was submitted on the basis of the record.  Petitioners did not file a brief, but respondent filed a brief within the time designated by the Court.

### OPINION

In the instant case, the fundamental issue is whether there was a section 752(b) distribution adjustment by any of the partnerships to those limited partners who accepted the settlement with Admiral and the partnerships.  Specifically, the parties diverge on the legal substance and effect of the Settlement Agreement.  Respondent asserts that the financial arrangements embodied in the Settlement Agreement resulted in a section 752(b) distribution to petitioners.  Conversely, petitioners contend that none of the partnerships made such a distribution to them.

Section 61 requires that certain amounts be included in gross income.  Section 61(a)(13) provides, in part, that gross income means all income from whatever source derived, including, inter alia, distributive shares of a partnership's gross income.

Section 701 provides that a partnership is not liable for Federal income taxes; instead, persons carrying on business as partners are liable in their separate or individual capacities for the income taxes arising from partnership operations.  In

---

[8]The motion was denied.  <u>Dakotah Hills Offices Ltd. Partnership v. Commissioner</u>, T.C. Memo. 1996-35.

determining his or her income tax, a partner must take into account his "distributive share" of each item of partnership income, gain, loss, deduction, and credit. Sec. 702. Each partner is taxed on his distributive share of partnership income without regard to whether the income is actually distributed to him. Sec. 1.702-1(a), Income Tax Regs. Section 722 provides that the basis of a partnership interest acquired by contribution of money or other property to a partnership is the amount of such money, and the adjusted basis of such property, increased by any gain recognized under section 721(b) to the contributing partner at such time.

A partner's basis of his partnership interest is subject to adjustments. In particular, a partner's share of liabilities of the partnership are included in computing the partner's tax basis of his partnership interest. Cf. Crane v. Commissioner, 331 U.S. 1 (1947).

Section 752(a) provides that any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liability by reason of the assumption by such partner of partnership liabilities, shall be considered a contribution of money by such partner to the partnership. This contribution results in an increase in the partner's basis of his partnership interest. Sec. 722.

Section 752(b) provides that any decrease in a partner's share of the liabilities of a partnership, or any decrease in a

partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership. Likewise, such a decrease in a partner's share of the liabilities of a partnership results in a reduction in a partner's tax basis in his partnership interest. Sec. 722.

A partner's contribution of a promissory note to a partnership will not, in and of itself, establish basis since the note is not deemed to be cash, and is not property in which the partner possesses a basis. Sec. 722; Gemini Twin Fund III v. Commissioner, T.C. Memo. 1991-315, affd. without published opinion 8 F.3d 26 (9th Cir. 1993). However, in order for a limited partner to acquire basis in his or her partnership interest with respect to the contribution of a promissory note, the rules of section 752(a) apply. Accordingly, if the limited partner's share of the partnership's liabilities is increased upon the contribution of a promissory note, the increase will be treated as a contribution of money, and will, therefore, increase basis pursuant to section 722. Sec. 1.752-1(e), Income Tax Regs.[9]

The aforementioned provisions' requirement that the limited partner is obligated to make an additional contribution is satisfied if the limited partner has an unconditional, ultimate

---

[9]Applicable to partnership liabilities incurred or assumed before Jan. 30, 1989.

liability to contribute certain amounts toward the partnership's recourse liabilities in the event the partnership's assets are insufficient to satisfy the outstanding liabilities, and if the limited partner has no right of reimbursement if constrained to make up the difference.  Gefen v. Commissioner, 87 T.C. 1471 (1986); Abramson v. Commissioner, 86 T.C. 360 (1986); Smith v. Commissioner, 84 T.C. 889 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986).

Accordingly, our determination in this instance concerns the limited partners' personal liability with respect to the payment of partnership recourse liabilities derived from the investor notes that were contributed to the partnerships.  Respondent contends that the limited partners became obligated to Admiral due to the partnerships' failure to meet the terms of the various loans from the lenders.  In turn, the limited partners were either unable or refused to meet their obligations as delineated in the investor notes.  Therefore, respondent argues that, in 1989, constructive distributions occurred as a result of the Settlement Agreement between the limited partners, the partnerships, and Admiral.  In particular, respondent cites the language of the Settlement Agreement which provided that the investor notes contributed by the limited partners would be returned to the investors and never be enforced against the limited partners themselves.  On the other hand, petitioners argue that the investor notes were not liabilities, but, rather,

assets of the partnerships. In essence, petitioners contend that the investor notes did not result in an increase, pursuant to section 752(a), in the basis of their partnership interests. Additionally, petitioners evidently assert that Admiral was the "equitable owner" of the investor notes, and that, the partnerships were the owners de jure of the aforementioned notes. In other words, petitioners argue that Admiral was not the ultimate creditor. Also, petitioners argue that since there was no actual distribution of money, there was no section 752(b) distribution. We agree with respondent.

The financing arrangements in the instant case rendered each limited partner liable with respect to the recourse liabilities of the partnerships up to and including the amount of that limited partner's note in the event of default by the partnership on such liabilities. Moreover, at the inception of the partnerships, the limited partners were aware that their investor notes (held by the partnerships as assets) would be converted into and applied as collateral by the partnerships. Specifically, the limited partners executed security agreements which conveyed to the respective partnerships security interests in the investor notes.

As noted, the partnerships held the investor notes as assets which were utilized as collateral for loans in connection with real estate acquisitions. In particular, the partnerships assigned their security interests in the investor notes to the

lenders.  Also, to obtain loans from the lenders, the partnerships made financial arrangements with Admiral in which it guaranteed the performance of the limited partners.  In that regard, the partnerships executed an agreement to indemnify Admiral against losses on the financial guaranty bonds in the event that the insurance company was obligated to reimburse the lenders on all outstanding loans.  In connection with the foregoing transactions, Admiral possessed security interests in the investor notes.  The partnerships, however, were unable to discharge the indebtedness to the lenders.  Furthermore, upon notice and demand from the lenders, the limited partners did not meet their obligations under the outstanding investor notes.  Consequently, Admiral, as the guarantor, was obligated to pay the lenders on the bonds.  Subsequently, there was a settlement in which both Admiral and the partnerships released the limited partners from all obligations on the investor notes, and, in turn, the limited partners agreed to surrender and convey their partnership interests back to the partnerships.  Moreover, Admiral agreed to indemnify the limited partners against claims by third parties in connection with the investor notes.

The sum and substance of the foregoing transactions reflect that the limited partners did not unilaterally possess rights of reimbursement from the partnerships or the general partners for amounts owed by the limited partners to the lenders with respect to the investor notes.  At the time those notes were pledged as

collateral for the partnerships' liabilities, the limited partners, accordingly, secured, pursuant to section 752(a), an increase in the basis of their interests in the partnerships equal to the amounts of those notes.

In the Settlement Agreement, the investors were, in essence, relieved of personal liability with respect to their interests in the partnerships and in the investor notes. When Admiral satisfied the partnerships' obligations to the lenders, the partnerships were under obligation to Admiral. Correspondingly, Admiral acquired all interest in the investor notes, and, for all practical purposes, became the holder in due course of the investor notes. Admiral, therefore, became a creditor of the partnerships, and an asset of the partnership (the investor notes) was acquired by Admiral as collateral for the partnerships' indebtedness to Admiral.

Petitioners contend that, subsequent to the Settlement Agreement, the partnerships still possessed "legal muniment of title" in the investor notes. In that vein, petitioners assert that Admiral was simply the "equitable owner" of the investor notes. Petitioners argue, in essence, that while the Settlement Agreement may have extinguished Admiral's security interest in the investor notes, the partnerships still retained and held interest in the investor notes as assets.

The partnerships, however, did not possess any rights with respect to the outstanding investor notes. Petitioners disregard

the indisputable fact that the partnerships assigned the investor notes to the lenders in return for real estate loans. Once the partnerships defaulted on the aforementioned loans, all title and interest passed to the lenders. In due course, Admiral, therefore, possessed the right to hold the limited partners liable on the investor notes. Indeed, petitioners evidently concede as much. In that regard, the Settlement Agreement divested the limited partners of liability for the outstanding investor notes. Also, in the event that the investors were still held liable by third parties for the investor notes contributed to the partnerships, Admiral agreed to compensate or save harmless the aforementioned investors. Accordingly, the investors' execution of the Settlement Agreement resulted in distributions to them under section 752(b).

We reject, likewise, petitioners' contention that they are not liable for a section 752(b) deemed distribution because there was no actual cash distribution. Although there was no such distribution, petitioners are, pursuant to section 752(b), considered to have received a deemed or constructive distribution when they were relieved of their share of the partnerships' debts. O'Brien v. Commissioner, 77 T.C. 113, 118 (1981). Specifically, O'Brien v. Commissioner, supra, involved a partner's abandonment of his interest in a real estate partnership. The partnership held real estate subject to nonrecourse debt. The taxpayer sent a letter to the partnership

abandoning his interest and walked away from the venture.  The

partnership continued in business.  We held that a partner's

> abandonment of his partnership interest resulted in a
> decrease in his share of the partnership liabilities
> within the meaning of section 752(b), not because he
> ever had personal liability under State law, but
> because he is no longer considered under the applicable
> Code provisions as sharing in the nonrecourse
> liabilities of the partnership.

O'Brien v. Commissioner, Id. at 118.  Thus, the taxpayer was held

to have been relieved of his share of partnership liabilities

upon the abandonment of his interest, causing a constructive cash

distribution under section 752(b).  Moreover, this constructive

distribution was held to be in liquidation of the partner's

interest; it occurred upon termination of his partnership

interest by abandonment.  See also White v. Commissioner, 991

F.2d 657, 661 (10th Cir. 1993), affg. T.C. Memo. 1991-552

("reduction in partner's liabilities by reason of a partnership's

assumption of those liabilities is a cash distribution" citing

sec. 752(b)).

As noted, in the Settlement Agreement, petitioners'

respective shares of the partnerships' recourse liabilities were

decreased.  Accordingly, under section 752(b), petitioners are

considered to have received constructive distributions through

the abandonment of their partnership interests and the

forgiveness of the outstanding investor notes by Admiral and the

partnerships.  White v. Commissioner, supra.

Accordingly, we hold that petitioners realized distributions pursuant to section 752(b).  Due to concessions,

<u>Decisions will be entered</u>

<u>under Rule 155.</u>