T.C. Memo. 2014-182

UNITED STATES TAX COURT

VISIONMONITOR SOFTWARE, LLC, TORGEIR MANTOR,
TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7632-12.                          Filed September 3, 2014.

<u>Richard E. Sympson</u> and <u>Derek B. Matta</u>, for petitioner.

<u>Carl D. Inskeep</u> and <u>Carol B. McClure</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  Torgeir Mantor and his partner Alan Smith started VisionMonitor Software, LLC back in 2002.  They contributed a good deal of their savings and labor, but VisionMonitor lost money for the first several years.  Another partner, a deep-pocketed corporation, was willing to contribute nearly a

[*2] million dollars to keep the firm afloat, but it wanted Mantor and Smith to place themselves at greater risk. Mantor and Smith responded by contributing their own promissory notes to VisionMonitor in both 2007 and 2008. VisionMonitor recorded the notes on its books as additional capital and accrued interest on them--but neither Mantor nor Smith funded them during either year.

Mantor and Smith argue that the notes increased their bases in VisionMonitor, which would let them claim greater passthrough losses from those years on their individual returns. The Commissioner says that VisionMonitor's basis in each note was zero because the partners' bases in the notes were zero. The partners reply that the notes put them at substantial financial risk and that should be enough.

FINDINGS OF FACT

Mantor received his bachelor's degree in business in Norway in 1979, and an MBA from the University of Wisconsin in 1980. He took a job in Houston working as a financial analyst for a company called Norse Services Houston, Inc. Norse was eventually bought by the American Metallurgical Coal Company (AMC), an investment company focused on the energy industry. Mantor rose to become president of AMC and worked there until 2000. As AMC wound down most of its Norse investments, Mantor decided to start VisionMonitor. In 2002, he

**[\*3]** made an initial capital contribution of more than $300,000 and with Alan

Smith and AMC founded the VisionMonitor partnership.[1]

VisionMonitor burned money for the next four years, and AMC refused to

shovel in any more unless Mantor and Smith put some additional "skin in the

game." This was a problem--Mantor and Smith didn't have the liquidity to

contribute cash. So they called their longtime attorney, Rick Sympson, to discuss

some ideas. Smith asked Sympson about the tax implications of contributing

promissory notes to a partnership. Sympson did some cursory research to make

sure that the notes "would get him basis," but testified that he relied mainly on the

fact that Mantor and Smith were required by the other investors to contribute

something more to the company. He knew the notes were enforceable, and that

the partnership would put them down as assets on its balance sheet. So he told

Mantor and Smith that the notes were appropriate capital contributions and "would

create partnership basis." But he never issued a written legal opinion, and didn't

---

[1] An LLC is a hybrid form of business entity that shares some of the characteristics of a partnership and some of the characteristics of a corporation. It has "members" rather than shareholders, and an LLC with more than one member is by default classified as a partnership for tax purposes. Sec. 301.7701-3(b)(1)(i), Proced. & Admin. Regs. Because of this, we refer to VisionMonitor throughout as a partnership and its members as partners. (Section references are to the Internal Revenue Code and regulations in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.)

[*4] review any company documents before giving his oral advice. This was still good enough for Mantor and Smith, and Mantor and Smith agreed at the start of 2007 to a "Resolution of the Managing Members" of VisionMonitor. They agreed to freeze their salaries, to provide personal credit to the "Company vendors * * * to ensure continued uninterrupted operations," and to "indebt themselves through notes payable to the Company to improve the Company's financial position." The resolution was the formal authorization for the issuance of the promissory notes from Mantor and Smith to VisionMonitor. This was also not their first time-- Smith had already made contributions of promissory notes in 2004, 2005, and 2006, as had Mantor in 2005.

Their 2007 notes were for $50,000 and $95,000; and their 2008 notes were for $25,000 and $43,000. This was enough for AMC--satisfied that Mantor and Smith were all in, AMC provided VisionMonitor an additional $900,000 to sustain operations--and received in exchange $450,000 in equity and $450,000 in convertible debt.

The execution of this transaction was not perfect. Smith's notes are signed and notarized, but contain incorrect dates and incorrect values as to the amounts payable. His 2007 note for $95,000 states a written nominal amount of "One Hundred Thousand Dollars" with a parenthetical next to it reading

**[*5]** "($104,451.07)" and the date June 30, 2008. His 2008 note for $43,000 similarly contains a nominal amount of "One Hundred Thousand Dollars" with a parenthetical figure stating "($58,718.27)" and the date July 31, 2009. The amount of the parenthetical figure following the nominal amount of each note seems to include accrued but unpaid interest that Smith owed on his previously contributed notes. And the nominal amount seems to be a carryover from a prior draft of the note that sloppy proofreading didn't catch, but the amounts that the partners now claim as the face values of the notes are the values actually reported in VisionMonitor's books, although neither the nominal amount nor the amount in the parentheses matches the amount that is identified on the VisionMonitor return as Smith's 2007 and 2008 contributions.

Mantor's notes were never notarized, but the dates on the unsigned acknowledgment certificates are March 31, 2007 and April 30, 2008. The nominal value of the 2007 note is stated as "Fifty Thousand Dollars ($50,000.00)" and that of the 2008 note is stated as "Twenty Five Thousand Dollars ($25,000.00)" which is just what VisionMonitor reported as Mantor's capital contributions. Unlike the interest on Smith's notes, the interest that Mantor promised to pay is not included in the parenthetical figure following the nominal amount of each note.

**[*6]** All four were 7-year balloon notes with 6-percent interest rates. All four notes were unsecured, and in none of them did either Mantor or Smith assume any partnership debt. The notes also state the payee as "VisionMonitor Investors, LLC," which was not actually the name of the company. (This was to have been the name of a holding company for VisionMonitor Software, but everyone involved treated the notes as for the benefit of the actually existing company, and they were consistently recorded as assets on that company's books.) Strapped for cash, Mantor and Smith couldn't make the interest payments and instead had VisionMonitor report unpaid accrued interest on the unpaid promissory notes.[2]

AMC's money did its work, though, and VisionMonitor became profitable in 2012 and continued to grow in 2013. But this case is about VisionMonitor's loss years. The Commissioner audited both Mantor's and VisionMonitor's returns for 2007 and 2008, and then he issued both a notice of deficiency to the Mantors and a notice of final partnership administrative adjustment (FPAA) to Mantor as

---

[2] Not only were the notes a bit off, but so were VisionMonitor's Schedules K-1. VisionMonitor reported Mantor's ending shares of profit, loss, and capital in 2007 as 43.78%, 43.78%, and 32.3594%, respectively, but his beginning shares for 2008 as 61.6648%, 14.4197%, and 31.24%. The same inconsistency is present on VisionMonitor's 2008 K-1 to Mantor, 2007 K-1 to Smith, and 2007 K-1 to AMC. There are no tax consequences from these mistakes.

[*7] tax matters partner of VisionMonitor.[3]  We consolidated the cases and tried them in Texas, where Mantor continues to reside and where VisionMonitor was organized and has its principal office.  See Tex. Civ. Prac. & Rem. Code Ann. sec. 15.002 (West 2002).  The parties settled all the issues in the Mantors' individual case except for some items that both parties agreed needed to be dismissed for lack of jurisdiction, and we severed that individual case after trial.  All that's left for us to decide then is whether Mantor and Smith generated bases in their partnership interests when they contributed their personal promissory notes and whether any penalty is applicable.

OPINION

I.    Jurisdiction

Partnerships don't pay income tax, but they do file information returns, and partners are supposed to use the numbers from those returns on their own individual returns.  See secs. 701, 6031, 6222(a).  TEFRA has a set of special tax

---

[3] Under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648, any partnership must designate one of its partners as the tax matters partner (TMP) to handle its administrative issues with the Commissioner and manage any resulting litigation.  The purpose of audits at the partnership level, and of requiring partnerships to have a TMP, is to have a single point of adjustment for all partnership items at the partnership level.  Kligfeld Holdings v. Commissioner, 128 T.C. 192, 200 (2007); see sec. 6231(a)(7); sec. 301.6231(a)(7)-1, Proced. & Admin. Regs.

**[*8]** and audit rules that apply to all partnerships (with exceptions that aren't

relevant here). See sec. 6231(a)(1).

TEFRA limits our jurisdiction at the partnership level to

> *partnership items of the partnership for the partnership taxable year*
> *to which the notice of final partnership administrative adjustment*
> *relates*, the proper allocation of such items among the partners, and
> the applicability of any penalty, addition to tax, or additional amount
> which relates to an adjustment to a partnership item.

Sec. 6226(f) (emphasis added).

So what are partnership items? Section 6231(a)(3) says that

> [t]he term "partnership item" means, *with respect to a partnership*,
> any item *required to be taken into account for the partnership's*
> *taxable year* under any provision of subtitle A to the extent
> regulations prescribed by the Secretary provide that, for purposes of
> this subtitle, such item is more appropriately determined at the
> partnership level than at the partner level. [Emphasis added.]

"Partnership item" is still a term that's fuzzy around the edges, but there's no

blurriness here--a partner's basis in contributed property is definitely a partnership

item. Nussdorf v. Commissioner, 129 T.C. 30, 42 (2007); sec. 301.6231(a)(3)-

1(a)(4), Proced. & Admin. Regs.[4]

---

[4] A "nonpartnership item" is "an item which is (or is treated as) not a
partnership item." Sec. 6231(a)(4). And an "affected item" is a nonpartnership
item that is affected by the determination of a partnership item. See sec.
6231(a)(5); Ginsburg v. Commissioner, 127 T.C. 75, 79 (2006); 6611 Ltd. v.
Commissioner, T.C. Memo. 2013-49, at *46, 105 T.C.M. (CCH) 1309. The Code

(continued...)

**[\*9]**   Once we spot a partnership item we have jurisdiction to redetermine it regardless of whether the Commissioner adjusted it in the FPAA.  See, e.g., Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 95 (2012).  We also have jurisdiction to determine "the proper allocation of  * * *  [these] items among the partners and the applicability of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item."  Id.

## II.   Contributed Property

The value of what a partner contributes to his partnership can be tricky when he contributes something other than cash--like the notes at issue here. VisionMonitor argues that the contribution of the promissory notes increased Mantor's and Smith's outside bases in amounts equivalent to their face value.  But a partnership's basis in property contributed by a partner is the adjusted basis of that property in the hands of the contributing partner at the time of the contribution.  Sec. 723.  The Commissioner argues that the company's basis in the notes is zero because Mantor's and Smith's bases in them were each zero.

---

[4](...continued)
tells us that we can redetermine affected items (with the exception of certain penalties) and other nonpartnership items only at the individual level and not in a partnership-level proceeding.

**[*10]**  We have to agree with the Commissioner.  We have long held that the contribution of a partner's own note to his partnership isn't the equivalent of a contribution of cash, and without more, it will not increase his basis in his partnership interest.  See Dakotah Hills Offices Ltd. P'ship v. Commissioner, T.C. Memo. 1998-134, 75 T.C.M. (CCH) 2122 (no increased basis because not cash equivalent and not property in which partner has basis); Gemini Twin Fund III v. Commissioner, T.C. Memo. 1991-315, 62 T.C.M (CCH) 104 (partner's outside basis not increased by contribution of promissory note), aff'd without published opinion, 8 F.3d 26 (9th Cir. 1993); Oden v. Commissioner, T.C. Memo. 1981-184, 41 T.C.M. (CCH) 1285 (partner has zero basis in own promissory note), aff'd without published opinion, 679 F.2d 885 (4th Cir. 1982).[5]

VisionMonitor relies on Gefen v. Commissioner, 87 T.C. 1471 (1986).  In Gefen, a partner executed a limited guaranty as a condition of her acquisition of an interest in a limited partnership.  Under its terms, she assumed personal liability to

---

[5] Revenue Ruling 80-235, 1980-2 C.B. 229, summarizes this corner of partnership-tax law.  It states that the contribution of a note by itself does not increase a partner's outside basis because he has a zero basis in the note.  His outside basis will, however, increase if and when he actually makes payments on the note.  Id.; cf. sec. 1.704-1(b)(2)(iv)(d)(2), Income Tax Regs. (providing that a partner's capital account is not increased with respect to a note written by that partner until there is either a taxable disposition of the note by the partnership, or the partner makes principal payments on the note).

[*11] the partnership's existing creditor for her *pro rata* share of the partnership's recourse indebtedness to that creditor. She also agreed that the partnership could call on her to contribute to the partnership an amount equal to the partnership's outstanding debt. We held that she was entitled to increase her basis in the limited partnership by the specific amount of the partnership's recourse debt that she personally assumed under the terms of this guaranty. Id. at 1501. We pointed to section 1.752-1(e) of the regulations, which provides that a partner's share of partnership liabilities is determined in accordance with her ratio for sharing losses under the partnership agreement; or if none of the partners has any personal liability with respect to a partnership liability, by allocating the share of liabilities under section 752(c) in accordance with partner's ratio for sharing profits. Id. at 1499-1500 (citing sec. 1.752-1(e), Income Tax Regs.).

VisionMonitor's reliance on this case is misplaced. In Gefen, unlike Dakotah, Gemini Twin Fund III, and Oden, a limited partner directly assumed partnership recourse indebtedness and also became obliged to make additional capital contributions. See Gefen, 87 T.C. at 1501 n.23. VisionMonitor argues that the notes in this case, like the assumption of debt in Gefen, were necessary to persuade a third party to kick in more funding to a cash-strapped partnership. But unlike the partner in Gefen, neither Mantor nor Smith were guaranteeing a

[*12] preexisting partnership debt to a third party. And they did not directly assume any of VisionMonitor's outside liabilities--these notes are their liability to VisionMonitor, not an assumption or guaranty of VisionMonitor's debt to a third party. Mantor did sign a resolution in 2007 that included a promise "to provide * * * personal credit to the company vendors * * * to ensure continued uninterrupted operations"--but there's no evidence that either he or Smith ever actually provided that credit. And there's also no evidence that Mantor or Smith were personally obliged under the VisionMonitor partnership agreement to contribute a fixed amount for a specific, preexisting partnership liability.

This means these cases are more like Dakotah, Gemini Twin Fund III, and Oden. As in Gemini Twin Fund III, the partners here contributed their personal promissory notes to the partnership. Here, as there, the partners each have no adjusted basis in the notes, and until they are paid, the notes are only a contractual obligation to their partnership. Mantor made a payment under his notes only in 2010, and the record has no evidence that Smith ever did. We therefore find that Mantor's and Smith's bases in their promissory notes during the 2007 and 2008

**[\*13]** tax years were zero and, accordingly, that VisionMonitor's basis in the contributed notes was also zero.[6]

III.    Penalties

All that is left is the penalties that the Commissioner argues are applicable at the partnership level. See sec. 6221. As the Supreme Court recently noted in United States v. Woods, 571 U.S. ___, ___, 134 S. Ct. 557, 563-64 (2013), "[p]rohibiting courts in partnership-level proceedings from considering the applicability of penalties that require partner-level inquiries would be inconsistent with the nature of the 'applicability' determination that TEFRA requires." "Applicable" here means whether the penalties "'relate[ ] to an adjustment to a partnership item.'" Id. at ___, 134 S. Ct. at 563 (quoting sec. 6226(f)); Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649, 655 (D.C. Cir. 2010) (quoting sec. 6226(f)), aff'g in part, rev'g in part, and remanding 131 T.C. 84 (2008).

---

[6] VisionMonitor argues that the notes should be included in outside basis because Mantor and Smith were "at risk" under section 465. It argues that the substance of the transaction made Mantor and Smith ultimately responsible for a fixed and definite obligation, that nothing in the Code or caselaw makes any explicit preclusion of partnership debts made to the partners themselves, and that the promissory notes constituted "genuine indebtedness." The Commissioner retorts that the "at risk" limitation isn't a partnership-level determination, and isn't something we can determine here. It's also an issue that we don't have to decide because the relevant question isn't whether the notes were a debt owed by the partners to VisionMonitor but whether the partners had basis in the notes. See Hambrose Leasing 1984-5 Ltd. P'ship v. Commissioner, 99 T.C. 298 (1992).

**[\*14]** "TEFRA gives courts in partnership-level proceedings jurisdiction to determine the applicability of any penalty that could result from an adjustment to a partnership item, even if imposing the penalty would also require determining affected or non-partnership items such as outside basis." Woods, 571 U.S. at ___, 134 S. Ct. at 564. Therefore, the actual assessment of a penalty relating to an adjustment of a partnership item is done at the partner level but is based on partnership-level determinations. Sec. 301.6221-1(c), Proced. & Admin. Regs.

Partnership-penalty law gets even more complicated when one looks at defenses because jurisdiction over them can exist at both the partnership and partner levels. The partnership itself may have a defense to a penalty that would shield all its partners; one partner may have a defense to the penalty that's all his own. Our Court has jurisdiction to rule on any partnership-level defense, but

**[\*15]** partners have to take their partner-level defenses to a refund forum.[7]  Fears

v. Commissioner, 129 T.C. 8, 10 (2007).

With this background out of the way, we now turn to the applicability of any

penalty and the merits of any partnership-level defenses.  The Commissioner

argues that the 20-percent section 6662 accuracy-related penalties are applicable

to VisionMonitor's position that the contributed notes had a nonzero basis.  He

claims this was negligent, an intentional disregard of the rules or regulations, and

caused the substantial-understatement penalty to be applicable to the Mantors.

See sec. 6662(a), (b)(1)-(2).

We have little doubt that these grounds make the section 6662 accuracy-

related penalty "applicable".  Consider the substantial-understatement penalty.

See sec. 6662(b)(2), (d).  There is a substantial understatement of tax if the amount

---

[7] Well, maybe.  If the Commissioner assesses a tax, and then tries to collect any unpaid portion of it by filing notices of liens against, or levying on, a taxpayer's property, the Code grants taxpayers a collection due process hearing. See secs. 6320, 6330.  And we have jurisdiction to review the Commissioner's determinations after these hearings.  And our review of the Commissioner's determinations might well be *de novo* inasmuch as a partner assessed a partnership-level penalty may never receive a notice of deficiency or otherwise have a preassessment opportunity to dispute his underlying tax liability.  See Grunsted v. Commissioner, 136 T.C. 455, 458 n.4 (2011); Prince v. Commissioner, 133 T.C. 270, 274 (2009); Lindberg v. Commissioner, T.C. Memo. 2010-67, 2010 WL 1330343, at \*6.  But we'll just note this wrinkle for now and iron it out if it ever comes to us.

**[\*16]** of the understatement "exceeds the greater of * * * 10 percent of the tax required to be shown on the return," or $5,000. Sec. 6662(d). But the determination of an underpayment cannot happen at the partnership level because partnerships don't pay taxes, partners do. We can, however, still determine the *applicability* of the understatement (or negligence, or intentional-disregard) penalty, at the partnership level. As Judge Marvel presciently observed, "related" just means a "logical and causal relationship." Petaluma FX Partners, LLC v. Commissioner, 135 T.C. 581, 602-03 (2010) (Marvel, J. dissenting); Tigers Eye Trading, LLC, 138 T.C. at 171 (Marvel, J., still dissenting); see also Woods, 571 U.S. at ___, 134 S. Ct. at 564-65 (Marvel, J., vindicated).

Applicability of penalties that relate to the adjustment of a partnership item must be litigated in the partnership-level proceeding. We know that a partner's basis in contributed property, like the notes in this case, is definitely a partnership item, see Nussdorf, 129 T.C. at 42, so the accuracy-related penalty for an understatement of tax *relates to* an adjustment to the reported basis. VisionMonitor misreported the notes as increases in the capital accounts of Smith and Mantor. Thus, we find that the substantial-understatement penalty is applicable here. The Commissioner can't stack accuracy-related penalties, sec. 1.6662-2(c), Income Tax Regs., so we can quickly turn to the question of

**[*17]** VisionMonitor's defense without considering whether VisionMonitor's return position was also negligent or showed intentional disregard of the rules or regulations.

VisionMonitor's only defense is that it relied on professional advice. Sec. 6664(c). The regulation tells us that VisionMonitor's reliance must also have been, under all the circumstances, reasonable and in good faith. See sec. 1.6664-4(b)(1), Income Tax Regs. The caselaw lists three factors. <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. 43, 99 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002).

- Was the adviser a competent professional who had sufficient expertise to justify reliance?

- Did the taxpayer provide necessary and accurate information to the adviser?

- Did the taxpayer actually rely in good faith on the adviser's judgment?

The key figure here is Rick Sympson. Sympson was the longtime attorney and tax preparer for VisionMonitor and the Mantors. He knew the ins-and-outs of the business and had established himself as an experienced tax professional. He's a certified tax specialist and has more than 20 years of experience. We take no issue with his competence.

[*18] Whether VisionMonitor provided accurate information to Sympson is a closer question. The promissory notes themselves are riddled with errors and inconsistencies. Smith's notes have discrepancies between their nominal amounts and parenthetical figures, and though signed, those notes aren't dated. The notary statement attached to each (dated June 30, 2008, and July 31, 2009) is well after VisionMonitor's prior tax year had closed, but the partnership returns credit each note as a capital contribution for the preceding tax year. Mantor's notes have the right amounts and a dated notary statement--but are unsigned. We also could not figure out why notes dated two months apart (the Mantor note dated April 30, 2008, and the Smith note dated June 30, 2008) are accounted for in two different years.

These problems may push Neonatology's second prong to poke at VisionMonitor's defense, but we don't think they push hard enough to puncture it. The test tells us to look at whether VisionMonitor provided necessary and accurate information to Sympson. Because a penalty is applicable as a result of a position taken on a return, we look to see if VisionMonitor provided what information it had before it filed its returns and not just when Sympson was giving his oral advice to Mantor. We think accuracy here means holding nothing back and letting the professional give his opinion on the notes and associated records in all their

[*19] confusing messiness. And on this point we find both Mantor and Sympson credible in saying that Sympson had access to all the records he needed when he prepared the returns, as he had for many years in the past. We also believe Sympson's testimony that Mantor discussed the factual background with him. Even though Mantor is far more formally educated and numerate than the taxpayer in Cox v. Commissioner, T.C. Memo. 2005-288, 2005 WL 3446052, at *4, 90 T.C.M. (CCH) 599, we find that his openness with his tax adviser is similar. Cf. Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Ohana v. Commissioner, T.C. Memo. 2014-83, at *28; Hristov v. Commissioner, T.C. Memo. 2012-147, 2012 WL 1869001, at *8-*10, 103 T.C.M. (CCH) 1792.

We have little problem in finding that VisionMonitor actually relied on Sympson's advice--his conclusion that the notes were additions to VisionMonitor's capital (and the capital accounts of Smith and Mantor) was set out on the company's returns. And we have little trouble in finding that this reliance was in good faith. In a case like this one--where VisionMonitor secured Smith and Mantor's promises to increase their personal risk alongside their promise to extend their personal credit to the firm's vendors--advice from a longtime tax adviser that this increased Smith's and Mantor's bases would seem reasonable to Mantor. Even though we can't agree that the contribution of the

**[*20]** notes increased their bases, we cannot find Mantor's (and through Mantor, VisionMonitor's) reliance on Sympson's reading of the subtleties in the caselaw in bad faith.

That makes this a split result, which means that

<u>Decision will be entered</u>

<u>under Rule 155</u>.